# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16cr192 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DAMARI MYKEL ROULHAC, | : | |
| Defendant | : | |

## MEMORANDUM

Before the court for disposition are Defendant Damari Mykel Roulhac's motion for judgment of acquittal and motion for new trial. The motions have been fully briefed and are ripe for disposition.

**Background**

On the night of July 1, 2016, Park Ranger Mitchell B. Hauptman patrolled the Delaware Water Gap National Recreation Area with Ranger Joshua Fitch. (Doc. 78, Notes of Testimony (hereinafter "N.T.") Sept. 25, 2017 at 58-59). They rode in a 2016 Ford Explorer with emergency lighting. (Id. at 61). Appearing on the vehicle is a green and gray stripe, an arrowhead and the words "National Park Service." (Id.) Across the rear of the vehicle are the words "Law Enforcement." (Id.)

They patrolled on or near Johnny Bee Road, close to Fassler Pond. (Id. at 67). Hauptman noticed two cars parked near the pond and a campfire. (Id. at

74-75).  Neither people nor fires are allowed in that area at night.  (Id. at 75).  The rangers noticed that individuals walked quickly or ran to the vehicles, evidently after noticing the rangers' vehicle.  (Id. at 76).  Hauptman activated his emergency lights and pulled toward the pond blocking that exit.  (Id.)  The emergency lights include a spotlight in the middle, and two light heads that flash red and blue.  There are two lights above the windshield and near the grill.  (Id. at 64-65).

    Ranger Fitch approached one of the vehicles, a red Audi (Id. at 82).  The other car, an orange Chevrolet Cobalt, headed for one of the other exits from the pond area.  (Id.)  Hauptman grabbed his high-powered flashlight and walked to Johnny Bee Road to flash at the second vehicle and persuade it to stop.  (Id.)  The vehicle came out on Johnny Bee road facing Hauptman.  (Id. at 83).   He flashed the light and yelled, "Police!" or "Police! Stop!"  (Id.)  He also identified himself.  (Id.)  Additionally, he signaled with his hand for the vehicle to stop.  (Id.)

    Hauptman stood in the middle of the road, and instead of stopping, the Cobalt accelerated toward him.  (Id. at 84).  Hauptman stepped to the right to avoid the vehicle.  (Id. at 85).  The car veered off the road and into the brush, where it stopped.  (id. at 86).

    Hauptman approached the stopped car and reached through the open driver's side window.  (Id. at 88). He grabbed the driver, and the car drove off.

As the car drove off, it struck the ranger, who still had his arm through the window. He let go of the driver, and the vehicle drove off. (Id. at 88).

Hauptman returned to his patrol vehicle with Ranger Fitch and they pursued the vehicle. (Id. at 89). Ultimately, they did not catch the Cobalt. (Id.) During their investigation, however, they uncovered information pointing to Defendant Damari Roulhac as the driver of the Cobalt. Thus, on July 5, 2016, the United States of America filed a criminal complaint against defendant charging him with one count of assaulting a United States National Park Ranger in violation of 18 U.S.C. § 111(a)(1) and one count of fleeing from a lawful stop and arrest in violation of 19 U.S.C. § 7(3) and 13. On September 25 and September 26, 2017, the court held a trial where the government presented four witnesses and the defendant testified on his own behalf.

The jury convicted defendant of one count of assaulting a law enforcement official in violation of 18 U.S.C. § 111(a)(1) and one count of fleeing from law enforcement officials in violation of 19 U.S.C. § 7(3) and 13. After the trial, the defendant filed a motion for judgment of acquittal and a motion for a new trial.[1] We will address each motion separately.

---

[1] On March 28, 2018, the day of the defendant's sentencing, we denied the motions. (Doc. 97). This memorandum explains our reasons for the denial.

3

**I. Motion for judgment of acquittal**

**Standard of review**

Defendant has filed a motion for judgment of acquittal. Rule 29 of the Federal Rules of Criminal Procedure provides that a defendant may move for a judgment of acquittal after a guilty verdict. In deciding such a motion, we view the record in the light most favorable to the prosecution, and the issue is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Boria, 592 F.3d 476, 480 (3d Cir. 2010).

The defendant filed his motion for judgment of acquittal on October 10, 2017. The government filed a brief in opposition to the motion on January 22, 2018. Thus, it is ripe for disposition. The basis for the motion is the assertion that the evidence is insufficient to sustain the convictions on both the assaulting an official count and the fleeing and alluding count. We will address each count separately.

**A. Assault of an official**

As noted above, the jury found defendant guilty of assaulting a United States National Park Ranger in violation of 18 U.S.C. § 111(a)(1). This statute makes it a crime when a person "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title

4

while engaged in or on account of the performance of officials duties."[2] Further, to be liable under the statute, the defendant must have "an intent to assault[.]" United States v. Feola, 420 U.S. 671, 684 (1975).

Here, the defendant argues that the government failed to provide evidence that defendant <u>intentionally</u> struck a federal officer. We are unconvinced.

Testimony at trial, which we must view in the light most favorable to the prosecution, indicates that the defendant both intimidated and assaulted the ranger. In the early part of the incident, Ranger Hauptman stood in the middle of the road attempting to bring the defendant to a halt. Rather than stopping at that point, however, the defendant accelerated toward the ranger. (Doc. 78, N.T. Sept. 25, 2017 at 84). Ranger Hauptman stepped out of the way to avoid the vehicle. (<u>Id.</u> at 85). Driving a vehicle toward an officer and failing to stop at their command amounts to an "assault" under the statute. <u>United States v. Davidson</u>, 567 F. App'x 90, 94 (3d Cir. 2014).

Moreover, at trial, Hauptman testified that the vehicle then veered off the side of the road into some brush and came to a stop. (Doc. 78, N.T. Sept. 25, 2017 at 86). Ranger Hauptman put his left arm into the car to detain the defendant. (<u>Id.</u>) The defendant then accelerated the car, while the ranger's arm

---

[2] Section 1114 includes "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services[.]"

5

was still inside of it. (Id. at 88). As a result, the ranger hit the post behind the driver's side window of the car and hit his right knee on the side of the car. (Id.)

Based upon all of this evidence, a reasonable jury could conclude that the defendant intentionally used his car to assault Ranger Hauptman. Thus, defendant's motion for a judgment of acquittal on the basis that insufficient evidence supports his conviction for assault of an official will be denied.

### B. Fleeing from a law enforcement official

The second crime that the jury convicted the defendant of is fleeing from a law enforcement official, in violation of 18 U.S.C. §§ 7(3) and 13. This statute makes it a crime to violate a state criminal law on lands which are "reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof[.]" Here, it is not contested that the land at issue, a portion of the Delaware Water Gap National Recreation Area, is geographically located within the Commonwealth of Pennsylvania. Thus, under these statutes, the government charged the defendant with a Pennsylvania crime, 75 PA. CONS. STAT. ANN. § 3733, fleeing or attempting to elude police officer.

This crime is defined as follows: "Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to flee or attempts to elude a pursuing police officer, when given a visual and

audible signal to bring the vehicle to a stop, commits an offense [.]" 75 PA. CONS. STAT. ANN. § 3733 (emphasis added).

Defendant argues now that the evidence is insufficient to prove that he acted "willfully." Specifically, the defendant argues that the government did not present sufficient evidence that he saw and heard the ranger commanding him to stop his vehicle. We find no merit to the defendant's argument.

The government provided evidence at the trial that Ranger Hauptman provided visual commands, accompanied by a flashing flashlight, for Roulhac to pull over. (Doc. 78, N.T. Sept. 25, 2017 at 83). The jury certainly could have concluded that defendant saw these signals as he drove directly at Hauptman. Ranger Fitch and Defendant's associate Jason Garcia testified to hearing these commands. (Doc. 77, N.T. Sept. 26, 2017 at 7; Doc. 78, N.T. Sept. 25, 2017 at 160-61). The jury could reasonably have concluded that defendant heard these commands also through the open window in his car. Hauptman also activated all the emergency lights on his vehicle. (Doc. 78, N.T. Sept. 25, 2017 at 76). Two of the defendant's associates testified as to seeing the emergency lights. (Doc. 78, N.T. Sept. 25, 2017 at 159, Doc. 77, N.T. Sept. 26 at 29).

Defendant did not heed the emergency lights, hand signals and verbal commands. Thus, the jury could conclude that he willfully did not bring his vehicle to a stop or fled to avoid the rangers.

7

In support of his position, the defendant relies upon his own testimony that he did not see or hear anything. Sufficient evidence, as set forth above, was presented at trial for the jury to discredit the defendant's testimony, and at this stage of the proceedings, we must review the evidence in the light most favorable to the prosecution. Accordingly, the defendant's motion for judgment of acquittal with regard to the fleeing and eluding charge will be denied.

**II. Motion for new trial**

**Standard of review**

Defendant also moves for a new trial. A new trial may be awarded "if the interest of justice so requires." FED. R. CRIM. P. 33. However, "[c]ourts should exercise great caution in setting aside a verdict reached after fully-conducted proceedings," and particularly so where "the action has been tried before a jury." United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008) (internal quotation marks and citation omitted).

The defendant's motion asserts that the court erred in the following manner: in denying defendant's request for a "false in one, false in all" jury instruction; in overruling defendant's objection to the government's requested jury instruction of "consciousness of guilt (flight, concealment, use of an alias, etc.); in not allowing defendant the opportunity to impeach a government witness with the

witness's police training materials; and in curtailing defendant's cross-examination of government witnesses.  We will address these issues separately.

### A.  "False in one, false in all" jury instruction

Defendant requested that the court instruct the jury with the "False in one, false in all" jury instruction.  (Doc. 77, N.T.  Sept. 26, 2017 at 93).   The court denied the request and now defendant argues that the denial warrants the granting of a new trial.

This "False in one, false in all" instruction provides as follows:

> If you believe that a witness knowingly testified falsely concerning any important matter, you may distrust the witness' testimony concerning other matters.  You may reject all of the testimony or you may accept such parts of the testimony that you believe are true and give it such weight as you think it deserves.

THIRD CIRCUIT MODEL CRIMINAL JURY INSTRUCTIONS 4.26

Defendant's argument is that Ranger Hauptman testified that he and his ranger partner had investigated the scene due to a campfire, which was prohibited.   Other testimony indicated that there was no campfire.  The defense argument is that Hauptman lied about the fire and if he lied about that, he may have testified falsely regarding other aspects of the case, such as the nature of his encounter with the defendant where he claims the defendant refused to stop and eventually struck him with his car.

9

The "False in one false in all" jury instruction is not mandatory. If the jury instructions on credibility are thorough – adequately covering the evidence in the record- then the court may in its discretion refuse the instruction. United States v. Leon, 739 F.2d 885, 893 n.20 (3d Cir. 1984). Here, the court denied the requested jury instruction, and explained that the issue is properly a matter of argument for both sides. (Doc. 77, N.T. Sept. 26, 2017 at 93).

In fact, defense counsel did address the issue in his closing argument. He argued: "The investigation of this whole incident was because they were illegally having a fire in a place that a fire does not belong. Guess what guys? There was no fire. . . . But in this case ranger Hauptman made a serious mistake. He lied plain and simple." (Id. at 113). Further, defense counsel argued: "If we can't believe an officer when it comes to saying the reason for the stop was a fireplace, if he is lying about hat, then how can you believe them about anything else he has to say?" (Id. at 114).

Thus, despite not receiving a charge on "False in one, false in all" the court allowed the defense to argue the issue, and the defendant argued it. Additionally, the court provided a full and fair, thorough, instruction on credibility. (See id. at 122-23, 130-31). Accordingly, a new trial is not warranted on the basis that the court did not provide a charge which it properly denied.

**B. "Consciousness of guilt" jury instruction**

10

In the instant case, the government requested a jury instruction on "Consciousness of guilt, flight/concealment." The court approved the instruction, and the defendant objected. The defendant now argues that a new trial is warranted because the court improperly charged the jury with regard to consciousness of guilt.

During jury instruction, the court instructed the jury as follows:

> You heard testimony after the crime was supposed to have been committed Mr. Roulhac [may] have fled from the location in the vehicle. If you believe that Mr. Roulhac fled from the location in the vehicle, then you may consider this conduct along with all of the other evidence in deciding whether or not the government has proved beyond a reasonable doubt that he committed the crime charged.
> This conduct may indicate that he thought he was guilty of the crime charged and trying to avoid punishment. On the other hand, sometimes innocent people flee from the location in the vehicle for some other reason. Whether or not this evidence causes you to find that the defendant was conscious of his guilt of the crime charged and whether that indicates that he committed crime charged is entirely up to you as the sole judge of the facts.

(Doc. 77, N.T. Sept. 26, 2017 at 131-32).[3]

Defendant argues that the government's theory of the case is that the defendant struck Hauptman while fleeing the area. It is not possible for him to have possessed a consciousness of guilt prior to striking the ranger, thus the

---

[3] Third Circuit Model Criminal Instruction No. 4.30 provided that basis for this instruction.

flight instruction did not fairly and adequately present the issue to the jury. The government, on the other hand, argues that defendant's argument mischaracterizes the prosecution's theory and the evidence presented at trial. We agree. While it is true that the defendant attempted to flee before striking the ranger, that is not the subject of the jury instruction. Defendant also fled the area after the incident where Hauptman reached into the car. Specifically, the rangers testified that the vehicle fled *after* hitting Hauptman, and they conducted a brief pursuit. (Doc. 78, N.T. Sept. 25, 2017 at 88, 160; Doc. 77, N.T. Sept. 26, 2017 at 8). Thus, defendant's argument is without merit.

### C. Impeachment with police training materials

Part of the defense strategy was to highlight that the park rangers did not follow proper police protocol in the attempted stop of defendant's vehicle. Defendant states that to become a national park ranger, one must take a five (5) month police training course in Glynco, Georgia. Agent Hauptman evidently took this training in 2011. Defendant sought to use training materials from the course in cross-examining Agent Hauptman to demonstrate that proper procedures were not used on the night in question. The court did not permit the defense to use of the training materials during cross-examination. (Doc. 78, N.T. Sept. 25, 2017 at 133-34). Now, defendant argues that a new trial is justified because the court did not permit impeachment of the witnesses with the ranger training materials.

The government objected to the material on grounds of that they had never seen it before, and could not verify its authenticity. But most importantly, they objected on the basis of relevance. (Id. at 129-30, 132). The court sustained the objection and precluded the evidence. (Id. at 133-34).

The Federal Rules of Evidence provide that relevance evidence is admissible at trial. FED. R. EVID. 402. "Relevant Evidence" is defined as follows: "Evidence is relevant if:

>(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

>(b) the fact is of consequence in determining the action."

FED. R. EVID. 401.

Rule 403 of the Federal Rules of Civil Procedure provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

A court's ruling to admit or exclude evidence is reviewed under an abuse of discretion standard. United States v. Cunningham, 694 F.3d 372, 383 (3d Cir. 2012). "An abuse of discretion occurs only where the district court's decision is

13

arbitrary, fanciful, or clearly unreasonable. . . ." Id. (internal quotation marks omitted).

Here, defendant argues that cross-examining Ranger Hauptman on the provisions of the training material would have been relevant in that it demonstrated that he failed to follow approximately a dozen specific instructions taught to him and would have shown to the jury that but for the ranger's actions, the incident would not have occurred. This evidence does not have great relevance. The fact that the ranger's actions may have been contrary to his training **does not** create a defense to the charges.

If we assume that the evidence here had some slight relevance, it was appropriate for the court to preclude it on the grounds of wasting time, undue delay and needlessly presenting cumulative evidence. See FED. R. EVID. 403. Defense counsel had asked the witness about his training. Although the witness at times was not a model of cooperativeness, he nonetheless answered the questions. (Doc. 78, N.T. Sept. 25, 2017 at 124-129, 136-143). In fact, the ranger testified that his actions were not in compliance with the training he had, which is the very evidence that the defendant sought to introduce through the precluded manuals. (Id.) Accordingly, admission of the training manuals and cross-examination on them would have been the needless presentation of cumulative evidence. The court properly precluded the training manuals.

### D. Cross-examination of government witnesses

Defendant next moves for a new trial on the basis that the court improperly precluded cross-examination of Ranger Gunderson, the supervisor of the park rangers. The defense sought to question Gunderson on his own land management police training program and the manner in which Hauptman failed to follow that program's directives. Additionally, the defense sought to ask Gunderson about the search of witness Jason Garcia's vehicle, to establish that the search was illegal and further support the defendant's position that the rangers failed to follow proper police protocol at every stage of the incident. Further, he sought to question Gunderson regarding the fact that he cited Garcia with possession of an open container of alcohol by a minor (a half-empty bottle of vodka) and accused him of having blood-shot eyes, but allowed him to drive away from the scene without any further tests of sobriety- which again demonstrates the "defense" that the park rangers failed to follow proper police protocol. After a careful review, we are not convinced by defendant's argument.

The information upon which they sought to cross-examine the witnesses simply was not relevant. It has no tendency to make any fact of consequence any more or less likely. <u>See</u> Fed. R. Evid. 401. Defendant presents no argument to establish that the search of Garcia's vehicle or his citation for an open containers violation had anything at all to do with the defendant's actions in

15

this case. Accordingly, we will deny the motion for a new trial based upon this ground.

**Conclusion**

For the reasons set forth above, we find no merit to the defendant's motion for judgment of acquittal or his motion for a new trial. Accordingly, the motions have been denied.

**BY THE COURT:**

**Date: April 9, 2018**　　　　　　　　**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**